## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

GUY FRANKLIN RANDALL,     )
                                     )
                    Plaintiff,    )
v.                               )     Case No. CIV-03-727-F
                                     )
BOARD OF COUNTY           )
COMMISSIONERS OF THE    )
COUNTY OF STEPHENS, et al.,  )
CURTIS WAYNE TURNER, JAILER, )
RON BRENTLEY, JAILER,     )
MIKE JONES, JAILER / DEPUTY,  )
JOSH SEELY, JAILER/DEPUTY,   )
ROGER MALLORY and LARRY   )
OYSTER, JAIL ADMINISTRATORS, )
WILLIAM L. CORPORON, M.D.,   )
SHERIFF RONALD HUNTER, and  )
SHERIFF JIMMIE BRUNER,    )
ALL DEFENDANTS BEING SUED  )
IN THEIR INDIVIDUAL AND    )
OFFICIAL CAPACITIES,       )
                                     )
                   Defendants. )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter is before the Court for consideration of several motions for summary

judgment filed by Defendants after they were served with Plaintiff's Amended Complaint

[Doc. #57].  In his Amended Complaint, Plaintiff, a state prisoner appearing *pro se* and *in*

*forma pauperis*, challenges as unconstitutional the conditions of his confinement and the

medical care he received as a pre-trial detainee in the Stephens County Jail.[1]  The following

motions are before the Court: (1) Defendant William L. Corporon's Motion for Summary

---

[1] Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee is entitled
to the same protection of his need for medical attention as that afforded to a convicted prisoner under
the Eighth Amendment.  *See Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992).

Judgment [Doc. #106] and Brief in Support [Doc. #107] (Corporon's Brief); (2) Defendant Jimmie Bruner's Motion for Summary Judgment [Doc. #109] and Brief in Support [Doc. #167](Bruner's Brief); (3) Defendant Ronald Hunter's Motion for Summary Judgment [Doc. #110] and Brief in Support [Doc. #128] (Hunter's Brief); (4) Defendant Mike Jones' Motion for Summary Judgment [Doc. #111] and Brief in Support [Doc. #118] (Jones' Brief); (5) Defendant Roger Mallory's Motion for Summary Judgment [Doc. #112] and Brief in Support [Doc. #119] (Mallory's Brief); (6) Defendant Larry Oyster's Motion for Summary Judgment [Doc. #113] and Brief in Support [Doc. #120] (Oyster's Brief); (7) Defendant Josh Seely's Motion for Summary Judgment [Doc. #114] and Brief in Support [Doc. #121] (Seely's Brief); (8) Motion for Summary Judgment by Stephens County Board of County Commissioners [Doc. #115] and Brief in Support [Doc. #123] (Board's Brief); (9) Defendant Curtis Wayne Taylor's Motion for Summary Judgment [Doc. #116] and Brief in Support [Doc. #125] (Taylor's Brief); and (10) Defendant Ron Brentley's Motion for Summary Judgment [Doc. #117] and Brief in Support [Doc. #122] (Brentley's Brief). For the following reasons, it is recommended that the motions for summary judgment submitted by the various Defendants be granted.

**Background**

Plaintiff was incarcerated in the Stephens County Jail from July 20, 2000, until his transfer to the Lexington Assessment and Reception Center (LARC) on May 30, 2001. *See* Amended Complaint at 4; Special Report [Doc. #103] at 3. For more than thirty years, Plaintiff has been dependent on insulin because of Type I diabetes. Plaintiff states that when

he entered the Stephens County Jail, he was also experiencing "the early stages of renal failure with hypertension."  He states that he was never seen by a physician in the jail, but he acknowledges that he was taken once or twice to the emergency room at Duncan Regional Hospital and that he was taken once to the office of a private physician.  Additionally, Plaintiff states that jail personnel called for emergency care from the fire department or ambulance services more than twelve times while he was incarcerated in the jail.  Amended Complaint at 4.

Plaintiff states that he gained nearly 50 pounds in water weight while he was incarcerated in the Stephens County Jail because a "jail physician" discontinued a prescribed diuretic.  Plaintiff further states that the jail physician changed his prescription for insulin and that this change resulted in numerous bouts of hypoglycemia.  Plaintiff contends that his blood glucose was not properly monitored and that he was not provided with a proper diabetic diet.  According to Plaintiff, he experienced numerous skin infections and lesions, which he attributes to "unhygenic" conditions in the jail, the lack of proper medical care, the lack of an initial screening procedure, the lack of a sick call procedure, and the lack of a physician on staff.  Plaintiff states that he developed end stage renal failure, gross hypertension, severe diabetes and chronic infections while he was incarcerated in the Stephens County Jail.  He attributes these maladies to his need for chronic care which he claims he did not receive.  Amended Complaint at 4.  Plaintiff states that he broke his great toe during an insulin reaction and that this injury was never treated by a doctor.  Amended Complaint at 5.

Additionally, Plaintiff challenges as unconstitutional the lack of mental health care available while he was incarcerated in the Stephens County Jail. He states that his "pain, mental anguish, and thoughts of dying due to complications from these diseases and injury" caused his mental state to deteriorate "to the point of not knowing what day it was or caring." He states that he was seen for only a few minutes by a "Licensed Professional Counselor or Psychologist, not a trained Psychiatrist and Medical Doctor." Plaintiff states that his appointed counsel was able to take advantage of his "lack of mental cognition" by telling him that all charges would be dropped if he would waive a jury trial. According to Plaintiff, he was "lied to and convicted and sentenced to twenty year sentence with the last five years on probation." Amended Complaint at 5.[2]

## Plaintiff's Claims

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs during the time he was incarcerated in the Stephens County Jail. Plaintiff also contends that he was not provided with proper food for his diabetic condition and that the "unhygenic" conditions in the jail contributed to his failing health. He also states that the Stephens County Jail has "no initial screening procedure" and that it does "not [have] a sick call procedure or a physician on staff." Amended Complaint at 4.

---

[2]Plaintiff has not named his appointed counsel as a defendant in this case. This Court has previously determined that challenges to Plaintiff's underlying convictions are not cognizable in this civil rights action. *See* Order [Doc. # 51].

## Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to the non-movant, in this case, Plaintiff. *See Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1253 (10th Cir. 2005) (*citing Kingsford v. Salt Lake City School District*, 247 F.3d 1123, 1128 (10th Cir. 2001)). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." *Id.* Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 322.

## Defendant Corporon's Motion for Summary Judgment

In Proposition IV, Plaintiff asserts that Defendant William L. Corporon "provided inadequate and insufficient medical care to address the medical and mental health needs of the Plaintiff." Amended Complaint at 11. Defendant Corporon asserts that Plaintiff's claims against him are barred by the applicable statute of limitations. He is correct.

Plaintiff identifies Defendant Corporon as "an individual that contracted with the Stephens County Commissioners and/or Sheriff's Office and/or Jail to provide for the care

and treatment of prisoners held in the Stephens County Jail." Amended Complaint at 3.

Plaintiff alleges that Defendant Corporon was deliberately indifferent to Plaintiff's serious

medical needs. In support of his claim, Plaintiff states that the doctor's examination was

"cursory at best" and that the doctor lacked "the specialty knowledge and skills to diagnose

the complex interaction of diabetes, hypertension and renal failure, jail food, jail conditions

and there [sic] interplay with plaintiff's chronic diseases." Plaintiff further states that

Defendant Corporon changed the type and dosage of the insulin Plaintiff was taking and

discontinued prescribing a diuretic without "several weeks of intense monitoring of blood

glucose levels" which, according to Plaintiff, is necessary when diabetic treatments are

changed. Plaintiff contends that the medical care he received does not "reach the National

Standard as required by Oklahoma Law." Amended Complaint at 11.

In his Affidavit, Defendant Corporon states that he practiced medicine in Duncan,

Oklahoma from July 1980 to July 2003. During the time relevant to this case, Defendant

Corporon was under contract with the Stephens County Sheriff's Department to provide

medical care to inmates of the Stephens County Jail upon request of jail personnel.

Defendant Corporon describes the contract as a "fee for service arrangement." Appendix

of Exhibits in Support of Summary Judgment Brief of Defendant, William L. Corporon,

M.D. [Doc. #108] (Appendix) Ex. 2 (Affidavit) at 2 ¶4. *See also* Corporon's Brief at 3.

According to Defendant Corporon's Affidavit, the Stephens County Sheriff's

Department contacted him in late July of 2000 and asked him to determine whether Plaintiff

had a urinary tract infection. Upon receiving the results of a urinalysis, Defendant Corporon

learned that Plaintiff had protein, sugar and blood in his urine but no infection. Affidavit at 2 ¶5. *See also* Redacted Records (attached to Affidavit) at 1-2.

On August 30, 2000, Defendant Corporon examined Plaintiff in Corporon's Duncan office. According to Defendant Corporon, Plaintiff was seeking treatment for high blood pressure and swelling feet. Defendant Corporon states that he reviewed Plaintiff's blood glucose logs and list of medications. He did not have access to other medical records. Plaintiff's legs and feet exhibited 2+ edema. Defendant Corporon assessed Plaintiff as being an insulin dependent diabetic (diabetes mellitus II) with hypertension and proteinuria. Affidavit at 2 ¶5; Redacted Records at 9. Defendant Corporon's notes state that Plaintiff was "alert and oriented" during the examination. Redacted Records at 9.

To address Plaintiff's physical problems, Defendant Corporon ordered changes in Plaintiff's diet. Extra bread was to be substituted for simple sugars, and Plaintiff was to receive a 10:00 p.m. snack consisting of bread and peanut butter. Affidavit at 2-3 ¶5; Redacted Records at 5, 7. Defendant Corporon states that based on his knowledge that the diuretic Hyzaar can cause elevations in blood glucose levels, he discontinued that medication and replaced it with Cozaar, also a diuretic. Affidavit at 3 ¶ 5; Redacted Records at 9. The medical records reflect that the Sheriff's department contacted Defendant Corporon on September 6, 2000, at which time Defendant Corporon issued instructions regarding the amount of insulin to administer to Plaintiff. Affidavit at 3 ¶ 7; Redacted Records at 8. The record indicates that Defendant Corporon was contacted for refills or samples of medication

7

for Plaintiff on September 7, 2000, October 9, 2000, February 1, 2001, and May 22, 2001. Redacted Records at 9-11.

Plaintiff does not state that he sought mental health care from Defendant Corporon or anyone else during his incarceration in the Stephens County Jail.  None of the Inmate Request for Medical Treatment forms seek treatment for mental health problems.  Moreover, there is no indication that Defendant Corporon was aware of any mental problems Plaintiff might have been suffering.

The limitations period for a § 1983 claim arising in Oklahoma is two years.  *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (quotation and citations omitted); *see also Smith v. City of Enid ex rel. Enid City Commission*, 149 F.3d 1151, 1154 (10th Cir. 1998) ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.") (internal quotation omitted).  "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (internal quotations and citations omitted).

Defendant Corporon states that Plaintiff knew about the change in insulin dosage on September 6, 2000.  He further states that Plaintiff knew just a few weeks after August 30, 2000, that he was gaining water weight.  Therefore, Defendant Corporon states that the two-year limitation period had expired even before Plaintiff filed his original Complaint on

8

May 27, 2003.  In his Response [Doc. #148], Plaintiff contends that he was "under the care and treatment of the defendants herein" until May 30, 2001, when he was transferred to the custody of the Oklahoma Department of Corrections and "immediately placed in the Hospital." Response at 10.  He contends that his cause of action did not accrue until May 30, 2001.  If this date is accepted as the date Plaintiff's claims accrued, the limitations period would have expired on May 30, 2003.

Forms used by Plaintiff to request medical treatment are attached to the Special Report [Doc. #103].  The Special Report is attached to Defendant Corporon's Appendix of Exhibits as Exhibit 3.   The last form submitted by Plaintiff requesting medical care for diabetes-related symptoms is dated May 6, 2001.  Plaintiff complained of low blood sugar.  Under "Action Taken" an unidentified person has written, "Gave tea & ham sandwich."  Plaintiff's final request for medical care, made on May 26, 2001, concerned a toothache.  It appears, then, that any claim Plaintiff might have for deliberate indifference to his need for medical attention for diabetes and related conditions accrued no later than May 6, 2001, and even earlier as to this Defendant.

Even if May 30, 2001, were accepted as the accrual date of Plaintiff's claims, however, Plaintiff's claims against Defendant Corporon would still be time-barred.  In his original Complaint, Plaintiff named as a defendant "Unknown Jail Physicians."  Service of the original Complaint was not effected on the "Unknown Jail Physicians."[3]  Plaintiff named

---

[3]*See* Process Receipt and Return directed to "Unknown Jail Physicians."  [Doc. #13].  The Remarks state, "Returned unexecuted – Marshal Service cannot serve 'unknowns.'  Must have a name."

Defendant William L. Corporon, M.D., for the first time in the Amended Complaint filed on May 13, 2004, almost one year after the two-year limitation period had expired by even the most generous calculation. Claims against Defendant Corporon are, therefore, time-barred unless the Amended Complaint relates back to the filing date of the original Complaint. Under Tenth Circuit precedent, it does not.

For a claim against an unknown defendant to relate back to the date of the original pleading, three requirements must be satisfied under Rule 15(c) of the Federal Rules of Civil Procedure. First, the claim or defense in the amended pleading must arise out of the same transaction or occurrence as set forth or attempted to be set forth in the original pleading. Second, the new party must have had notice of the action prior to the expiration of the 120-day time period provided by Rule 4(m) for service of process. Third, the party either must have known or should have known that, but for a mistake in identity, the action would have been brought against him. *See Watson v. Unipress, Inc.*, 733 F.2d 1386, 1390 (10th Cir. 1984).

Plaintiff cites an Order from the Eastern District of New York in support of his contention that his Amended Complaint "relates back to the original[.]" *See Mosley v. Jablonsky*, 209 F.R.D. 48 (E.D.N.Y. 2002). In *Mosley*, the plaintiff had named the sheriff's department as defendant in the caption of the case, rather than the individual employees involved in the alleged constitutional violation. The individuals, however, had been identified by name in the original complaint and throughout the proceedings. *Mosley* held that plaintiff's failure to include the individuals in the caption of the case was a "mistake"

10

resulting from the plaintiff's ignorance of both the "'technicalities of constitutional tort law' and procedural requirements," and that the failure to name the individuals could be "characterized as a 'mistake' for purposes of Rule 15(c)(3)." *Id.* at 53.  In this case, however, Plaintiff is seeking to substitute Defendant Corporon in the Amended Complaint for the "Unknown Jail Physicians, and Medical Personnel" named in the original Complaint.  Under Tenth Circuit precedent, the substitution of a named defendant for the original unknown defendant constitutes the adding of a party rather than the correction of a misnomer. *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).  *See also Watson*, 733 F.2d at 1389.[4] In such cases, the amended complaint does not relate back to the date the original complaint was filed.

The majority of federal courts have, like the Tenth Circuit in *Watson*, held that the lack of knowledge of a party's identity cannot be characterized as a "mistake in identity" for purposes of relation back under Rule 15(c). *See Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998) (Rule 15(c)(3) does not allow for relation back to prevent a time-bar where a plaintiff seeks to amend to substitute a named party for a "John Doe" defendant; under these circumstances there is no "mistake" in identity but rather the problem is not being able

---

[4]Rule 15(c)(1) states that an amended pleading relates back to the date of the original pleading when "relation back is permitted by the law that provides the statute of limitations applicable to the action."  In this case, the limitation period is borrowed from Oklahoma law. Oklahoma's rule governing the relation back of amended pleadings is, however, identical to the federal rule. *See* Okla. Stat. tit. 12, § 2015.  In *Dotson v. Rainbolt*, 894 P.2d 1109, 1114 (Okla. 1995), the Oklahoma Supreme Court cited *Watson* in determining that the plaintiff could not substitute a named party for a "John Doe" defendant after the statute of limitations had run. Therefore, Oklahoma law would not permit relation back of the Amended Complaint to the original, and Rule 15(c)(1) does not affect the timeliness of this action.

to identify the defendant); *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1996) ("We are compelled to agree with [the First, Fourth and Seventh Circuits] that Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."); *see also Wesley v. Don Stein Buick, Inc.*, 42 F. Supp.2d 1192, 1198 (D. Kan. 1999) (although plaintiff timely filed her civil rights complaint, her failure to replace unnamed defendants within the limitations period rendered her claims against those defendants time barred); *but see Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186 (3d Cir. 2001) (declining to join the majority and holding that use of a "John Doe" should be considered a "mistake" for purposes of Rule 15(c)(3)).

In his Response, Plaintiff states that "the theory of Equitable Tolling should be applicable" because he had been admitted to a hospital immediately after his transfer from the Stephens County Jail to LARC.  Plaintiff's Response [Doc. #148] at 10.

"Congress did not establish . . . a body of tolling rules applicable to actions brought in federal court under § 1983 – a void which is commonplace in federal statutory law." *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).  State law, therefore, generally governs the application of tolling in a civil rights action.  *See id.* at 484-87.  Oklahoma law restricts the bases on which a limitation period may be tolled:

> In general, Oklahoma permits the tolling of a statute of limitations in two circumstances.  First, the existence of a "legal disability" provides proper grounds for equitable tolling.  Although the exact definition of this term remains unclear, Oklahoma courts have applied this provision only for plaintiffs whose competency is impaired or who have not reached the age of majority. . . .

> Second, the Oklahoma discovery rule tolls the statute of limitations until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action. Therefore, if defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights, the limitations period may not be triggered.

*Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) (internal citations and quotations omitted). A plaintiff's physical disability is not recognized under Oklahoma law as a reason for tolling the limitation period.

There is no genuine issue of material fact concerning the timeliness of Plaintiff's claims. Because the claims against Defendant Corporon do not relate back to the original Complaint, and because Oklahoma law does not provide for tolling the limitation period, Plaintiff's claims against Defendant Corporon are time-barred. It is therefore recommended that the Motion for Summary Judgment filed by Defendant Corporon be granted.

## Motions for Summary Judgment of Defendants Hunter, Mallory and Turner

Defendant Hunter was the Sheriff of Stephens County when Plaintiff was first incarcerated there on July 20, 2000. Defendant Hunter left office on January 2, 2001. Hunter's Brief at 24. While Defendant Hunter was the Sheriff, Defendant Mallory was a jail administrator, *see* Mallory's Brief at 10, and Defendant Turner was employed as a jailer. Turner's Brief at 10. After having been elected Sheriff of Stephens County, Defendant Jimmie Bruner took office on January 2, 2001, and terminated the employment of Defendants Mallory and Turner effective that day. *See* Mallory's Brief Ex. 3; Turner's Brief Ex. 3; Bruner's Brief at 6 and Exhibit 5 (Affidavit of Jimmie Bruner).

As discussed above, civil rights actions accrue when a plaintiff knows or should have known that his constitutional rights are violated.  If Defendants Hunter, Mallory and Turner violated Plaintiff's constitutional rights, the violations would have been apparent when the violations occurred.  Because Defendants Hunter, Mallory and Turner did not work at the jail after January 2, 2001, they could not have violated Plaintiff's constitutional rights after that date.  Thus, Plaintiff's cause of action as to these Defendants accrued, at the latest, on January 2, 2001.  Plaintiff's limitation period began to run on that date and expired on January 2, 2003, more than four months before Plaintiff filed his original Complaint.

In his Responses [Docs. ##142, 146, 164], Plaintiff contends that Fed. R. Civ. P. 25(d) allows for the successors of Defendants Hunter, Mallory and Turner to be substituted as defendants, as if this rule would somehow affect the timeliness of this action.  It does not.  Rule 25(d) provides in relevant part:

> When a public officer is a party to an action in his official capacity and *during its pendency* dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.

Federal Rules of Civil Procedure Rule 25(d)(1) (emphasis added).  These Defendants left office before the original Complaint was filed.  Therefore, they did not "cease to hold office" during the "pendency" of this action, and Rule 25(d) is inapplicable.  There is no genuine issue of material fact concerning the timeliness of Plaintiff's claims against Defendants Hunter, Mallory or Turner.  It is recommended that summary judgment be granted in their favor.

**Motions for Summary Judgment of Defendants Jones, Oyster, Seely and Brantley**

Plaintiff states that Defendants Jones, Seely and Brantley are jailers at the Stephens County Jail and that Defendant Oyster is a jail administrator.  Like Defendant Corporon, these Defendants were first identified by name in Plaintiff's First Amended Complaint filed on May 13, 2004, over one year after the statute of limitations had expired.  In the original Complaint filed on May 27, 2003, Plaintiff named "Unknown Jailers, et al." and "Unknown Jail Administrators, et al."  The original Complaint was not served on either the "John Doe, Unknown Jailers/Detention Officers" [Doc. #11] or on the "John Doe – Unknown Jail Administrator/ Head Jailer/ Deputy" [Doc. #12].

In separate Motions, these defendants contend that Plaintiff's claims against them are barred by the applicable statute of limitations.  They are correct.  Because Tenth Circuit precedent treats the substitution of a named defendant for an original unknown defendant as the adding of a party rather than the correction of a misnomer or mistake, the Amended Complaint does not relate back to the original Complaint, and equitable tolling of the limitation period is not available under Oklahoma law.  *See* discussion *supra* at 10-13.

There is no genuine issue of material fact concerning the timeliness of Plaintiff's claims against Defendants Jones, Oyster, Seely and Brantley.  Plaintiff's claims against these Defendants are time-barred, and it is recommended that the Motions for Summary Judgment of Defendants Jones, Oyster, Seely and Brantley be granted.

Case 5:03-cv-00727-F   Document 187   Filed 04/26/05   Page 16 of 24

**Motion for Summary Judgment of Stephens County Board of County Commissioners**

The Stephens County Board of County Commissioners (Board) contends that Plaintiff's claims against it are barred by the applicable statute of limitations because the Board was named for the first time in Plaintiff's Amended Complaint.

As discussed above, three requirements must be satisfied before an amended pleading can relate back to the original: (1) the claim or defense in the amended pleading must arise out of the same transaction or occurrence as set forth or attempted to be set forth in the original pleading; (2) the new party must have had notice of the action prior to the expiration of the 120-day time period provided by Rule 4(m) for service of process; and (3) the party either must have known or should have known that but for a mistake in identity the action would have been brought against him.  *See* discussion *supra* at 10.  All three requirements are met as to claims against the Board.  First, the claims set forth in Plaintiff's Amended Complaint arise out of his incarceration in the Stephens County Jail as did the claims set forth in the original Complaint.  Second, the file contains a Process Receipt and Return signed by a U.S. Marshall's deputy indicating that one Barbara Prichard, identified as "authorized agent," accepted service of the original Complaint on behalf of "Stephens County, et al."  The "Special Instructions" portion of the form states, "There should be 3 different County Commissioners, each should receive a copy of suit, names are unknown at this time.  Please provide names of the Commissioners."  *See* Doc. #14.  The form states that process was served on August 27, 2003, well within the 120-day time period provided for service of process by Rule 4(m).  Moreover, under Oklahoma law, a county is sued by

naming the  Board of County Commissioners as a defendant.  Okla. Stat. tit. 19, § 4.[5]

Therefore, the Board either knew or should have known that naming Stephens County as a

defendant was a misnomer.  The Board is not prejudiced by allowing the Amended

Complaint to relate back to the filing date of the original because the same attorney who

entered a Special Appearance on behalf of Stephens County in response to the original

Complaint is now representing the Board.

The Board also contends, however, that the original Complaint was untimely because

Plaintiff's claims accrued no later than May 6, 2001, the last date Plaintiff requested medical

treatment for diabetes-related symptoms.  Plaintiff did not file his original Complaint until

May 27, 2003.  If Plaintiff's claims against the Board accrued before May 27, 2001, then the

action is time-barred even if the Amended Complaint relates back to the date of the original

Complaint.

An entity such as Stephens County may not be held liable in a civil rights action

"simply because it employs a person who violated a plaintiff's federally protected rights."

*Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996).  Rather, to establish liability of Stephens

County, Plaintiff must show the existence of a governmental custom or policy and a direct

causal link between the custom or policy and the alleged constitutional violation.  *See Board*

*of County Commissioners, Bryan County, Okla. v. Brown*, 520 U.S.  397, 403-404 (1997)

(*citing Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694

---

[5]The statute states in relevant part, "In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of _____[.]'"

(1978)); *Myers v. Oklahoma County Board of County Commissioners*, 151 F.3d 1313, 1320 (10th Cir. 1998) (to hold municipality liable under §1983 plaintiff must show that "some municipal policy or custom was the moving force behind the [alleged constitutional] violation").

In his Amended Complaint, Plaintiff states that the Stephens County Jail did not have adequate sick call procedures. Amended Complaint at 6. Plaintiff further alleges that the Stephens County Jail had a "custom of not having a jail physician within the jail or other adequate medical personnel to care for and treat the prisoners with chronic diseases[.]" Amended Complaint at 7. Plaintiff states that the jail's policy, procedure and custom of not having a jail physician within the jail "was so grossly inadequate to amount to deliberate indifference." *Id*.[6] In Proposition I, Plaintiff attributes these faults to the Board, alleging that the Board is the "final decision maker[] and funding authority of the Stephens County Sheriff's Office and jail." Amended Complaint at 6.

Plaintiff's claims against Stephens County through the Board rest solely on the alleged policies, procedures or customs involving requests for medical care and the failure to have a physician at the jail.

> Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. This requires the court to identify the constitutional violation and locate it in time.

---

[6]Plaintiff states that the Board ignored statutory authority in failing to provide a jail physician. Amended Complaint at 6-7. The statute to which Plaintiff is referring states that county commissioners "shall also have the power to appoint a medical officer to the jail[.]" Okla. Stat. tit. 57, § 51. The statute gives county commissioners the power to appoint medical officers, but the appointment of such a medical officer is not mandated by the statute.

*Smith*, 149 F.3d at 1154 (internal quotations and citations omitted).  During the first month of his incarceration, Plaintiff submitted seven Inmate Request for Medical Treatment forms to unspecified jail personnel on July 27, 28, and 30, and on August 1, 2, 7 and 19.  *See* Board's Brief, Ex. 3.  It is undisputed that on August 30, 2000, Plaintiff was taken from the jail to the office of Dr. Corporon for medical care.  By August 30, 2000, Plaintiff was well aware of the procedure for seeking medical care.  Because he was taken from the jail to Dr. Corporon's office, he also knew or should have known by that date that there was no physician on duty at the jail.  These are the facts supporting Plaintiff's allegations, and he was aware of these facts at the time his rights were allegedly being violated.  Plaintiff's claims against Stephens County through the Board accrued no later than August 30, 2000.  The limitation period had, therefore, expired before Plaintiff filed his original Complaint on May 27, 2003.  There is no genuine issue of material fact as to the accrual date of claims against Stephens County based on the alleged policies or customs of the Board.  Because the limitation had expired before Plaintiff filed his original Complaint, it is  recommended that summary judgment be entered in favor of the Stephens County Board of County Commissioners.[7]

---

[7]Plaintiff contends that this Court should apply the "mail box rule" set forth in *Houston v. Lack*, 487 U.S. 266 (1988) (*pro se* petitioner's notice of appeal is "filed" at moment of delivery to prison authorities for forwarding to district court).  Plaintiff verified his original Complaint on May 20, 2003, and that is the earliest date that Plaintiff could have placed the Complaint in the prison mail system.  Therefore, application of the "mail box rule" would have no effect on the timeliness of Plaintiff's original Complaint.

## Motion for Summary Judgment of Defendant Bruner

Defendant Bruner was elected Sheriff of Stephens County during the time Plaintiff was incarceration in the Stephens County Jail.  She assumed the duties of Sheriff on January 2, 2001.

Plaintiff states that Defendant Bruner is the "final decision maker for the Stephens County Sheriff's Office and jail."  Amended Complaint at 15.  Plaintiff's claim of liability against Defendant Bruner is premised on his contention that Defendant Bruner "failed to adequately train or supervise those individuals who operated the jail[.]"  Amended Complaint at 15.  It appears that these claims, too, are barred by the statute of limitations as the claims would have accrued within a reasonably short time after Defendant Bruner took office.  Additionally, however, Plaintiff has not supported his claims against this Defendant with sufficient evidence to create a genuine issue of material fact as to whether Defendant Bruner failed to properly train or supervise the jail staff.  For this reason, Defendant Bruner is entitled to entry of summary judgment in her favor.

Under Oklahoma law, the sheriff is "vested with the final policymaking authority over the Sheriff's Department, including the conduct of deputy sheriffs[.]" *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997) (citing Okla. Stat. tit. 19, §§ 514, 516, 547(A)).  Nevertheless, Plaintiff must establish that Defendant Bruner caused or contributed to the alleged constitutional violations. *See Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991).  A defendant's supervisory status alone is insufficient to support §1983 liability. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  "To establish liability under §1983

[a plaintiff] must show that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotations omitted).  Conclusory allegations are not sufficient to state a constitutional violation.  *See Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981).  State actors who participate in a constitutional violation in a supervisory role may incur liability, but "there is no concept of strict supervisor liability under section 1983." *Ruark* at 950 (internal quotation and citation omitted).

> In other words, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, just as with any individual defendant, the plaintiff must establish "a deliberate, intentional act by the supervisor to violate constitutional rights."

*Jenkins v. Wood*, 81 F.3d 988, 994 -995 (10th Cir. 1996) (*quoting Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992).

Where, as here, a claim is based on alleged failure to train or supervise, a plaintiff must plead and prove that "[t]he need for more or different supervision or training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [policymaker] can be said to have been deliberately indifferent to the need." *Brown v. Gray*, 227 F.3d 1278, 1291-1292 (10th Cir. 2000) (internal quotation and citation omitted).  *See also Jenkins* at 994 ("[I]f the inaction theory rests on an alleged failure to train, the plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can

reasonably be said to have been deliberately indifferent to the need for additional training.")
(internal quotation and citation omitted)).

To survive Defendant Bruner's Motion, Plaintiff must present facts supporting a
conclusion that Defendant Bruner "had a uniform policy of providing . . . jailers with
insufficient training in the areas closely related to his ultimate injury from which [one] might
infer that his particular jailer's training also was insufficient." *Lopez v. LeMaster*, 172 F.3d
756, 760 (10th Cir. 1999). Defendant Bruner states that the Stephens County Jail uses the
Minimum Jail Standards of the State of Oklahoma as its policy and procedures, and those
employed as Jailers are required to complete the training required by these standards. *See*
Bruner's Brief Ex. 5, Affidavit at 1-2. Under this policy, jailers who work directly with
prisoners during their first year of employment are required to complete at least twenty-four
hours of training that covers, among other things, emergency procedures, first aid, and
cardiopulmonary resuscitation. *See* Bruner's Brief Ex. 6 (Jail Standards) at 20-21.

Plaintiff has presented no facts to support a claim that personnel working at the
Stephens County Jail were not adequately trained or supervised, much less that Defendant
Bruner was deliberately indifferent to the need for more or different training or supervision.
In fact, quite the opposite is true.

Attached to Bruner's Brief as Exhibit 12 is a medical log for Plaintiff which shows
that Plaintiff's blood glucose level was checked several times each day and that medication
was administered each day. Plaintiff himself acknowledges that jail personnel called the
local ambulance or fire department services "more than twelve times" for him. Amended

22

Complaint at 12.   He also states that he was taken to the Duncan Regional Hospital Emergency Room for treatment.   *Id.*   These incidents do not indicate that jail personnel lacked appropriate training or that they were deliberately indifferent to Plaintiff's serious medical needs.  Rather, the calls for emergency medical help indicate that jail personnel were willing to procure medical help for Plaintiff whenever he needed it.

Plaintiff's conclusory allegations of "unhygenic" conditions in the jail are insufficient to support a claim of deliberate indifference.  *See Wise*, 666 F.2d at 1333.   Moreover, Defendant Bruner states in her Affidavit that inmates at the Stephens County Jail are responsible for cleaning their own cells, that cleaning supplies are distributed to inmates weekly, and that jail personnel attempt to provide inmates with requested cleaning supplies in a reasonable amount of time.  Bruner's Brief Ex. 5 at ¶ 7.  Plaintiff does not allege that he was not provided with appropriate cleaning supplies.[8]

Plaintiff has presented no evidence which suggests that jail personnel were inadequately trained or supervised by Defendant Bruner.  Plaintiff has also failed to present evidence which could create a genuine issue of material fact as to whether Defendant Bruner was deliberately indifferent to the need for more training or supervision of jail personnel. On that basis, Defendant Bruner is entitled to summary judgment as a matter of law, and summary judgment should be entered in her favor.

---

[8]In fact, Plaintiff's examples of "unhygenic" conditions center around the alleged "delivery of medications bare handed by jailers [and] dropping the medications on wet or damp floors." Amended Complaint at 9.  As discussed above, claims against individual jailers or jail administrators are time-barred.

## RECOMMENDATION

It is recommended that the Defendants' Motions for Summary Judgment [Doc. ##106, 109, 110, 111, 112, 113, 114, 115, 116, and 117] be granted.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by May __16th__, 2005.  *See* LCvR72.1.  Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __26th__ day of April, 2005.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE